**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DEBRA JENKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. CIV-04-0681-HE |
| ) | |
| THE STATE OF OKLAHOMA, <u>ex</u> <u>rel</u>. ) | |
| THE BOARD OF REGENTS OF ) | |
| OKLAHOMA AGRICULTURE AND ) | |
| MECHANICAL COLLEGES, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This case is before the Court on the motion for summary judgment filed by defendant The Board of Regents of Oklahoma Agricultural and Mechanical Colleges (hereinafter "Langston University") and the motion for partial summary judgment filed by plaintiff. The parties have responded in opposition to the respective motions. Upon review, the Court concludes defendant's motion should be granted in part and denied in part and plaintiff's motion should be denied.

Plaintiff alleges she suffered racial discrimination and a hostile work environment during part of her employment with the defendant.[1] She further alleges she suffered retaliation when she complained of such treatment. She brings claims of race discrimination, hostile work environment and retaliation pursuant to Title VII of the Civil Rights Act of 1964. Defendant has moved for summary judgment on plaintiff's claims alleging she has

---

[1]*Plaintiff is still employed by the defendant.*

failed to bring forth sufficient evidence to establish her claims. Plaintiff moves for partial summary judgment on the question of whether she has met her prima facie case of race discrimination and retaliation.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, the court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Martin v. Kansas, 190 F.3d 1120, 1129 (10th Cir. 1999) *overruled on other grounds* Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Martin, 190 F.3d at 1129.

## FACTS

Plaintiff, a caucasian female, has worked at Langston University, a historically African-American university, for over 24 years. Beginning in June of 2000, until July of 2002, plaintiff worked in the Human Resources Department of the University. Plaintiff's supervisors during that time period were all African-American. In August of 2000, plaintiff's supervisor, Beverly Smith, asked plaintiff what salary she would be willing to take for the position of payroll manager. Plaintiff stated she would take $30,000.00 for the position. Ms. Smith relayed this salary request to her supervisor but it was not "approved" due to plaintiff's

lack of a college degree. Plaintiff asserts she later learned that Ms. Smith never intended on giving the payroll manager position to plaintiff because plaintiff "was white" and because Ms. Smith "did not trust white people."[2] The position of payroll manager was awarded to Denise Baker, an African-American with a college degree, at an annual salary of $32,000.00.

After the job of payroll manager was given to Ms. Baker, plaintiff told Ms. Smith that she planned on complaining internally about her treatment. In the Fall of 2000, plaintiff spoke with Dr. Elbert Jones, Langston's affirmative action officer, about her situation. Plaintiff then filed an internal grievance on May 19, 2001. Pl's. Ex. 13.

In December of 2000, or January of 2001, plaintiff was asked by Ms. Smith to correct some payroll problems in the department. Plaintiff initially declined to correct these problems because she felt it was the responsibility of the new payroll manager and because she would not be receiving extra pay for performing these additional duties. She eventually did, however, correct the payroll problems as requested.

In February of 2001, plaintiff's job was "restructured" resulting in the removal of some job duties (at least on paper)[3] and the addition of some job duties. Plaintiff was not given a salary increase as a result of the restructuring.

In April of 2001, Ms. Smith gave plaintiff an overall performance evaluation of

---

[2]*These comments were allegedly made by Ms. Smith to plaintiff's fellow employee, Aegeda Riggins. Pl's. Ex. 3.*

[3]*Plaintiff claims she was still performing all of her old job duties as well as the new duties she had been assigned as a result of the restructuring.*

"performance meets requirements."[4] However, around the time of this evaluation, Ms. Smith recommended to Dr. Ernest L. Holloway, the President of Langston University, that plaintiff be placed on a "plan of improvement" and a month-to-month employment contract. Dr. Holloway accepted this recommendation and placed plaintiff on a plan of improvement and a month-to-month contract on July 18, 2001.

Plaintiff filed a charge of race discrimination with the Oklahoma Human Rights Commission and the Equal Employment Opportunity Commission on June 28, 2001. Ms. Smith was made aware of plaintiff's filings on July 20, 2001. On October 12, 2001, plaintiff filed a second charge of discrimination based on retaliation. Ms. Smith was made aware of this filing on October 22, 2001.

In April of 2002, Ms. Smith recommended to her supervisor that plaintiff be transferred to another department in the University. This recommendation was approved and plaintiff was transferred to the Division of Student Affairs at the start of the 2002 fiscal year.

## DISCUSSION

Disparate Treatment

Plaintiff claims she was treated differently than other employees in the Human Resources Department because of her race.[5] Specifically, plaintiff alleges she was

---

[4]*Ms. Smith did counsel plaintiff on several areas of her performance which, in Ms. Smith's view, were in need of improvement.*

[5]*Plaintiff relies on circumstantial evidence to prove her claims of discrimination. Accordingly, the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), applies to plaintiff's claims. Under this analysis, the plaintiff must first present (continued...)*

inadequately compensated for her duties, placed on a plan of improvement and given a month-to-month instead of yearly employment contract.

Generally, in order to establish a prima facie case of discrimination, plaintiff must demonstrate (1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) similarly situated employees were treated differently. Trujillo v. Univ. of Colo. Health Scis. Ctr., 157 F.3d 1211, 1215 (10th Cir.1998). However, because plaintiff claims reverse discrimination, the requirements of her prima facie case are modified as she "does not necessarily deserve the presumption of discrimination afforded to a member of an ostensibly disfavored minority class." Reynolds v. School Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1534 (10th Cir. 1995) (citing Notari v. Denver Water Dep't, 971 F.2d 585, 588-89 (10th Cir.1992)). In order to prove her prima facie case, plaintiff "must identify background circumstances that would justify applying to a majority plaintiff the same presumption of discrimination afforded to a minority plaintiff who establishes a prima facie case by showing that the defendant is one of those unusual employers who discriminate against the majority." Id.

Plaintiff has established the first element of her prima facie case. She has identified undisputed background circumstances related to the makeup of Langston University and her

---

*[5](...continued)*
*evidence to support a prima facie case of discrimination. English v. Colo. Dept. of Corrs., 248 F.3d 1002, 1008 (10th Cir. 2001). If a prima facie case is demonstrated, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions. Id. The burden then shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination. Id.*

minority position in the Human Resources Department. See Reynolds, 69 F.3d at 1534-35 (holding that the plaintiff had established a prima facie case of reverse discrimination by demonstrating that she was the only white employee in an otherwise all Hispanic department where Hispanic supervisors made most of the employment decisions about which plaintiff complained).

While defendant does not challenge the third element of plaintiff's prima facie case, it does allege that none of it actions were adverse to plaintiff. In addition, it claims plaintiff cannot show evidence of pretext because the personnel actions taken against plaintiff were legitimate and nondiscriminatory based on plaintiff's poor work performance and attitude.[6] For purposes of summary judgment, the Court concludes plaintiff has offered sufficient evidence of an adverse employment action. See, e.g., Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir. 1996) (finding that the pattern of actions taken by the defendant, beginning with a write-up, precluded summary judgment). See also Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir. 2003) (adverse employment actions are "liberally defined" in this Circuit). In addition, the Court concludes the evidence is sufficient to raise a genuine issue of material fact as to whether the defendant's proffered explanation was in fact the basis for its actions. Accordingly, the defendant's request for summary judgment on plaintiff's race discrimination claim is **DENIED**.

---

[6]*Pretext may be shown by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) (quoting Morgan v. Hilti, 108 F.3d 1319, 1323 (10th Cir. 1997)).*

Failure to Promote

Plaintiff claims she was denied the promotion to payroll manager because of her race. Plaintiff relies on indirect evidence in support of her claim.[7] In order to survive summary judgment on such a claim, plaintiff must produce evidence from which it might be inferred that: (1) the defendant is one of those unusual employers who discriminate against the majority; (2) she applied for and was qualified for a job for which the defendant was seeking applicants; (3) she did not receive the position; and (4) the position was not eliminated. Amro v. Boeing Co., 232 F.3d 790, 796-97 (10th Cir. 2000); Reynolds, 69 F.3d at 1534.

As noted above, plaintiff has offered sufficient evidence to make out the first element of her prima facie case. In addition, plaintiff has submitted undisputed evidence that she was qualified for the payroll manager position, that she did not receive the position and the position was not eliminated.

Because plaintiff has established a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for denying plaintiff a promotion. English, 248 F.3d at 1008. Here, the defendant states that plaintiff was not promoted because another applicant was better qualified, noting, among other things, that the person hired had a college degree. This reason is adequate to

---

[7]*Plaintiff relies in part on racial statements allegedly made by Ms. Smith to support her failure to promote claim. However, these statements do not constitute direct evidence of discrimination. See E.E.O.C. v. Wiltel, Inc., 81 F.3d 1508, 1514 (10th Cir.1996) (finding that "statements which are merely expressions of personal opinion or bias do not constitute direct evidence of discrimination . . . [b]ecause such statements require the trier of fact to infer that discrimination was a motivating cause of an employment decision).*

rebut plaintiff's prima facie case. Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999). As a result, the burden shifts back to plaintiff to demonstrate that the defendant's reason is pretextual. English, 248 F.3d at 1008.

As evidence of pretext, plaintiff relies on Ms. Smith's racial comments and the alleged inadequate qualifications of Ms. Baker as compared to the qualifications of plaintiff. While the Court does not conclude that plaintiff's own opinion about her qualifications is sufficient to give rise to a material factual dispute, see Simms, 165 F.3d at 1329, the Court does conclude the alleged comments of Ms. Smith are, under the circumstances present here, sufficient to raise a material question of fact. Accordingly, the Court **DENIES** defendant's motion for summary judgment on plaintiff's race discrimination claim.

Hostile Work Environment

Plaintiff alleges that "throughout her employment" with Langston she has been exposed to "racially-insensitive and derogatory remarks." In particular, she points to Ms. Smith's comments to Ms. Riggins and a comment by Ms. Smith to Dr. Jones that "she was tired . . . of having to deal with people like this." Pls. Ex. 9. Plaintiff also claims that Dr. Jones explained to her that she was essentially being transferred to another department because of her race. In addition, sometime in 2003, plaintiff claims that, while on a business trip, her fellow employees listened to what she viewed as a racially insensitive compact disc. She also alludes to a staff meeting in which her new supervisor is alleged to have said "Well,

you know how white people are."[8]  Pl's. Dep., p. 29.  Finally, Ms. Baker alleges that President Holloway ignored plaintiff and other white employees while walking on campus

In order for plaintiff to survive summary judgment on her hostile work environment claim, the record must support an inference of a racially hostile work environment.  <u>Ford v. West</u>, 222 F.3d 767, 775 (10th Cir. 2000).  The conduct complained of must be severe or pervasive enough to create both 'an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile'--and an environment the victim-employee subjectively perceives as abusive or hostile."  <u>Smith v. Northwest Fin. Acceptance, Inc.</u>, 129 F.3d 1408, 1413 (10th Cir. 1997).  In determining whether the plaintiff has made the required showing, a court looks to the totality of the circumstances, including, "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  <u>Sprague v. Thorn Americas, Inc.</u> , 129 F.3d 1355, 1365 (10th Cir. 1997) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993)).

In this case, plaintiff points to five isolated incidents of alleged harassment occurring over a four year period.  Considering the totality of the circumstances, the Court concludes

---

[8]*Defendant claims these incidents cannot be considered because plaintiff has failed to exhaust her administrative remedies.  However, for purposes of a hostile work environment claim, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 117 (2002).*

these alleged incidents, even if true, are insufficient "to show that plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently sever or pervasive to alter the conditions of [her] employment." Stinnett, 337 F.3d at 1219 (internal quotations omitted). Accordingly, defendant's motion for summary judgment on plaintiff's hostile work environment claim is **GRANTED**.

Retaliation

Finally, plaintiff alleges the defendant retaliated against her for complaining of discrimination. Specifically, she alleges her job requirements were changed without sufficient compensation, she was given improper performance evaluations, placed on a plan of improvement and forced to agree to a month-to-month employment contract.

In order to establish a prima facie case of retaliation, plaintiff must show that she engaged in protected activity, she suffered a subsequent adverse employment action by her employer, and there is a causal connection between her protected activity and the employer's action. Sanchez v. Denver Pub, Sch., 164 F.3d 527, 533 (10th Cir. 1998). Defendant alleges plaintiff has failed to establish an adverse employment action or a causal connection between plaintiff's protected activity and its actions. Defendant also asserts plaintiff has failed to establish pretext with respect to its actions.

As noted previously, plaintiff has offered sufficient evidence to make a prima facie showing of an adverse employment action. In addition, the Court concludes plaintiff has offered sufficient evidence to make a prima facie showing of causation between her protected activity and the defendant's personnel actions. Defendant first complained of discrimination

to her supervisor and management in the Fall of 2000. She then made an official internal complaint on May 19, 2001. Around the time of these complaints, plaintiff's job was "restructured," she received a mediocre performance review, she was placed on a plan of improvement and forced to accept a month-to-month rather than a yearly employment contract. The temporal proximity of these events to her complaints of discrimination is sufficient to make a prima facie showing of causation. See, e.g., Anderson, 181 F.3d at 1179 ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation.") (internal citation omitted). Accordingly, defendant's motion for summary judgment on plaintiff's retaliation claim is **DENIED**.

Inasmuch as factual issues exist as to the ultimate resolution of plaintiff's claims (as opposed to a prima facie showing), plaintiff's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.

Dated this 24th day of June, 2005.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE